# JUNE 14, 1933

### J. H. BOONE v. THE STATE.

No. 15894.   Delivered May 24, 1933.
State's Rehearing Denied June 14, 1933.
Reported in 61 S. W. (2d) 103.

The opinion states the case.

*A. C. Chrisman* and *Gene Turner,* both of Cleburne, and *McLean, Scott & Sayers,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is swindling; the punishment, confinement in the penitentiary for two years.

The charge in the indictment was predicated upon the giving of a check or draft in the sum of $105.00 to Ray Croft, it being averred that, in consideration of the draft, Croft delivered to appellant an automobile of the value of $600.00. The instrument set out in the indictment reads as follows:

"CSB   Hamilton  No._____
Pay to the  —Alvarado, Texas, 8—30—19230
order of   Croft Motor Co. $105/00

one Hundred Five_____Dollars

Perry National
to CITIZENS STATE BANK ( )
J. N. Boone Alvarado, Texas ( ) J. H. Boone
88-664   Hamilton
Hamilton Tx."

The indictment concludes as follows:

"Whereas in truth and in fact the said defendant at the time of so giving and drawing of said check or draft did not have either with said bank or said J. N. Boone sufficient funds to pay said check or draft, and then and there had no good reason to believe that said check or draft would be paid either by said bank or J. N. Boone, when the same would be, in the ordinary course of business, presented to said bank and to said J. N. Boone for payment, and payment of the same was refused for want of sufficient funds of said drawer."

The proof on the part of the state was to the effect that Ray Croft, the injured party, sold appellant an automobile for approximately $600.00. As a part of the consideration, appellant delivered to Mr. Croft a check or draft in the sum of $105.00. After delivering the draft, appellant went to his father's home and told him he had drawn a draft on him. Appellant's father

176

testified for the state that he did not know his son was going to draw a draft on him, and he had not given him permission to draw same. He said he did not owe appellant any money and had no money in his possession belonging to appellant. He testified that when appellant told him he had drawn the draft he said to appellant: "I have not got that money there in the bank and don't do that any more." He said he told appellant that he could not pay it. He testified, however, that if he had had the money in the bank he would have paid the draft if it had been presented to him. Again, he testified that he had theretofore honored drafts drawn on him by appellant, one being for $800.00. However, he said he knew that appellant was going to draw the previous drafts. He declared that he had advised his banker not to pay any checks drawn on his account except those signed by himself. Further, he testified that when he told appellant that he could not pay the draft appellant advised him not to worry as he would "fix it." He had at no time told appellant not to draw drafts on him, but he had no agreement with appellant that he might draw drafts on him. His other children checked on him whenever they wanted to.

The draft was not presented to appellant's father for payment until after the prosecution had been instituted, the date of presentment being approximately a year after the draft had been executed. The state's proof was to the effect that the banker had advised appellant's father about the time the draft was issued that he had a check in. The banker testified: "I am not positive about this. It was a few days after the check was in there. Mr. J. N. Boone did not agree to pay the check. I didn't construe this instrument as a draft and I didn't present it to Mr. J. N. Boone for the purpose of getting him to pay the same. I construed the instrument as a check on our bank, and since there wasn't any money there in the account I sent it back. I didn't present this instrument to Mr. J. N. Boone as a draft. * * * I never presented this draft to Mr. J. N. Boone for payment." Upon receiving the draft or check the bank returned it unpaid for the reason that appellant had no account in the bank. The witness who received the draft and carried out the details of the sale of the automobile testified as follows:

"Jack Boone here told Mr. Croft that he was going to draw on his father for the money, that he had the money in the Perry National Bank at Hamilton; that he and his father had some cattle or something down there together and that he would draw on his father for this money. I wrote this draft or check out myself for the $105.00."

It has been observed that it was averred in the indictment

that appellant had no good reason to believe that the check or draft would be paid either by the bank or by J. N. Boone when the same would be, in the ordinary course of business, presented to the bank and to J. N. Boone for payment. Further, it was averred that payment of the draft was refused for want of sufficient funds of the drawer. There was no allegation that the check or draft was ever presented. Whether such an allegation was essential it is not necessary to decide. The proof on the part of the state shows that the draft was not presented to J. N. Boone until approximately a year after it was delivered to the injured party. It was incumbent upon the state to support the allegation that appellant had no good reason to believe that J. N. Boone would pay the draft when presented in the ordinary course of business. Again, the state having alleged that payment was refused, it was incumbent upon the state to prove that J. N. Boone, as well as the bank, refused payment of the draft when it was presented for payment. The proof shows only that the bank refused to pay it. J. N. Boone was not given an opportunity to pay it at the time it reached the bank. It was returned by the bank unpaid without ever being presented to him. He said he would have paid it at the time it was issued if he had had the money, and it had been presented to him, and, further, that he would still pay it if he had the money. He did not see the draft for approximately a year after it was issued. Again, although testifying for the state, he said that he had paid drafts for appellant, and, further, that all of his children had at times checked on him. It is clear that the injured party, as well as appellant, treated the instrument as a draft drawn on appellant's father. This being true, and the indictment having averred, in effect, that it was a draft drawn on the father of appellant and the bank, we think the failure of the state to support the allegation in the indictment that appellant's father refused to pay the draft is fatal to the conviction.

It might be that it is not necessary, under the statute, to allege and prove that the check was presented in the ordinary course of business and payment refused because of want of sufficient funds of the drawer. However, it is not necessary to decide this question. As pointed out, the state having alleged that the draft was drawn on the father of appellant and the bank and that payment of the draft was refused, it was incumbent upon the state to support the allegation that appellant's father as well as the bank, refused to pay the draft.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE. — Considering the peculiar character and wording of the document upon which the prosecution is founded, we are constrained to adhere to our opinion on the original hearing that the conviction could not be sustained upon the evidence that was before the court. The document itself is peculiar. The indictment was drawn upon the theory that the presentation of the draft to J. N. Boone for acceptance or payment was contemplated, and the indictment specifically charged that the draft was presented to J. N. Boone for payment.

The motion is overruled.

*Overruled.*